**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LARRY DEAN PRESLEY**                                                **PLAINTIFF**

**v.**                           **CIVIL ACTION NO. 1:14cv130-MTP**

**DAVID SANDERS,
ELAINE LEGE, AND
RICKY WOODS**                                   **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [92] and the Plaintiff's Motion for Summary Judgement [94]. Having considered the Motions, applicable law, and case record, the Court finds that the Defendants' Motion [92] should be granted, the Plaintiff's Motion [94] should be denied, and that this action should be dismissed with prejudice.

**BACKGROUND**

On March 17, 2014, Plaintiff Larry Dean Presley, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. This lawsuit arises from events that took place while Plaintiff was housed at the Harrison County Adult Detention Center ("HCADC"). Plaintiff is currently housed as a post-conviction inmate at the Wilkinson County Correctional Facility. In his complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff asserts claims against David Sanderson, Elaine Lege, and Ricky Woods for violation of his Eighth Amendment rights based on the conditions of confinement he experienced at HCADC. As relief, Plaintiff requests an unspecified amount of monetary damages and requests that Defendants Sanderson, Lege, and Woods be demoted for their alleged wrongful behavior.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's hearing occurred on May 3, 2016.

**FACTS**

Plaintiff alleges that in August of 2013 contraband in the form of tobacco, lighters, and a phone was discovered in his cell, and that he was moved into administrative segregation as a result. A few days after this event, on August 27, 2013, Plaintiff claims he was moved to a "suicide cell," despite the fact that he was not on suicide watch. Plaintiff testified that he believes the transfer occurred because an investigation of the contraband was unsuccessful in uncovering how the items came into Plaintiff's possession. Plaintiff alleges that he noticed a strong smell as he was approaching the cell, and that he observed another inmate mopping the floor nearby. Plaintiff claims that he did not want to be placed in a cell because of the odor and because the other inmate was not cleaning the floor properly, but that Defendant Ricky Woods, a correctional officer at HCADC, ordered Plaintiff into the cell anyway. (Omnibus Transcript [92-7] at 16.) Upon entering the cell, Plaintiff claims that the walls were covered in human feces. Plaintiff claims that Woods was aware of the conditions in the cell and further, that the conditions were likely to be harmful to Plaintiff's health.

Plaintiff claims that he remained in the unsanitary cell for three days, until August 30, 2013. Plaintiff claims that he requested cleaning supplies, and that they arrived, but that correctional officers would not give the supplies to him. According to Plaintiff, he soon became frustrated with these conditions and on August 28, 2013, he punched the wall of the cell, injuring his hand. Plaintiff states that for this reason, he was placed on suicide watch for ten or twelve hours, and was interviewed by a social worker named Eddie McQuilling.[2] Plaintiff alleges that after viewing the conditions in the cell, McQuilling spoke to both Defendant Sanderson, the warden of HCADC, and Defendant Elaine Lege, the deputy warden, about the issue. According

---

[2] The Court is unsure of the correct spelling McQuilling's name as it is inconsistent in the various submissions.

to Plaintiff, Sanderson and Lege did nothing to help the Plaintiff even after they were notified of the foul conditions. However, Plaintiff did allege he was moved a day after he spoke to McQuilling about his conditions. ([92-7] at 19.) Plaintiff also indicated that Sanderson told McQuilling that the Plaintiff "was exactly where he [Sanderson] wanted him." However, Plaintiff states that was transferred to a different cell the next day, on August 30, 2013, as a result of McQuelling's efforts.

Plaintiff alleges that he developed a rash due to the filthy conditions of his cell. Plaintiff states that this rash required medical treatment, but cleared after a few months. According to the Plaintiff, jail nurses told him that his skin issues were attributable to the three days he spent in the cell. Plaintiff also alleges that he suffered emotional distress, and that a psychiatrist prescribed him Prozac a couple of months after the incident. Finally, Plaintiff alleges that he was wrongfully denied a mattress for the ten or twelve hours that he was on suicide watch while in the cell.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the

nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

First, the defendants submit that Plaintiff was a "detained parolee" at the time of the alleged events in this lawsuit. A "detained parolee" is a prisoner who has been arrested for a new crime while on parole or probation. *See Hamilton v. Lyons*, 74 F.3d 99, 105 (5th Cir. 1996); *Earrey v. Chickasaw County, Miss.*, 965 F. Supp. 870, 874 (N.D. Miss. 1997). Plaintiff in deposition testimony submitted by Defendants indicated that at the time of his arrest for "aggravated assault, armed robbery, …[and] burglary," that he was on probation pursuant to a prior felony conviction of unlawful possession of a firearm. *See* [92-1] at 2-3. As Plaintiff was on probation at the time of his arrest, both the fourteenth and eight amendment standards apply. *See Hamilton*, 74 F.3d at 106; *see also Earrey,* 965 F. Supp. at 874.

Where a parolee such as Plaintiff is incarcerated, both Fourteenth Amendment due process concerns and the Eighth Amendment's prohibition against cruel and unusual punishment are implicated. *Hamilton*, 74 F.3d at 104 n. 4; *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir.1993). Normally, a pretrial detainee acquires the benefits of *Bell v. Wolfish* in this type of case. 441 U.S. 520 (1979). *Bell* provides that "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.* at 539. However, "detained parolees" who challenge conditions of confinement do not get the benefit of *Bell* under the Fourteenth Amendment. The presumptive intent to punish derived from the *Bell* does not arise in such a case involving "conditions of confinement":

4

> Such an inference is warranted in the case of the typical pretrial detainee, in which the justification for detention arises only from a crime with which the person has been charged but not convicted. For such a person, the due process right to be free from punishment for a pending charge is equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish the detainee is equivalent to a finding that the government intended to punish the detainee for the pending charge. Thus, an inference that governmental intent was punitive is equivalent to an inference that the challenged condition is unconstitutional. However, such an inference is not warranted in the case of the detained parolee. Unlike the typical pretrial detainee, the justification for the detention of a detained parolee is dual. As noted by the Seventh Circuit, the detention and subsequent incarceration of a parolee are only triggered by the new arrest; detention and reincarceration are justified by the prior conviction. *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir.1988). For detained parolees, the due process right to be free from punishment for a pending charge is not equivalent to the right to be free from punishment altogether. In such cases, a finding that the government intended to punish a detained parolee is not equivalent to a finding that the government intended to punish the detained parolee for a pending charge. Thus, an inference that government intent was punitive is not equivalent to a finding that the challenged condition is unconstitutional.

*Hamilton*, 74 F.3d at 105–06.

In light of the special nature of his status, a detained parolee may establish a Fourteenth Amendment due process claim for the conditions of his confinement only where he can present direct evidence of an expressed intent to "punish him for the crime for which he has been charged but not yet convicted." *Id.* at 106. Additionally, however, even without the availability of the *Bell* test, Plaintiff may still utilize the Eighth Amendment to pursue a separate claim regarding conditions of confinement. *Id.* at 106 n. 8.[3] Here Plaintiff has not presented any direct

---

[3] "Detained parolees who cannot support a claim of unconstitutional conditions under the Fourteenth Amendment standard we announce today may of course still seek relief under the Eighth Amendment. The constitutional rights of parolees are at least as extensive as those of convicted prisoners. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir.1992), cert. denied, 510 U.S. 931 (1993)."

evidence of an expressed intent to "punish him for the crime for which he has been charged but not yet convicted," thus, his claims are brought pursuant to the Eighth Amendment.[4]

**Eighth Amendment Claims**

The Eighth Amendment protects inmates from cruel and unusual punishment and requires prison officials to provide humane conditions of confinement. *Palmer v. Johnson*, 193 F.3d 346, 351–52 (5th Cir.1999). In order to demonstrate a constitutional violation, a plaintiff must establish that an official was deliberately indifferent to a substantial risk of serious harm. *Id.* at 351–52. In order to prosecute an Eighth Amendment conditions of confinement claim, Plaintiff must allege facts which suggest that the prison officials' conduct resulted in the Plaintiffs being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health." *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). This "risk must be of such a level that today's society would not tolerate it." *Id.* A successful claim requires that Plaintiffs establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of the deprivations but nevertheless have shown a "deliberate indifference" to the Plaintiff's "health or safety." *Id.*; *see also Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

Assuming that Plaintiff's version of events is true, Plaintiff was exposed to the smell of feces for three days in his cell and was denied a mattress for 10-12 hours during a suicide watch. However, not all unpleasant conditions of confinement amount to cruel and unusual punishment. "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which

---

[4] In this case the charges according to the Plaintiff were, "aggravated assault, armed robbery,. . . and burglary." *See* Deposition [92-1] at 2.

6

house persons convicted of serious crimes, cannot be free of discomfort." *Id.* at 349. Those conditions which are "inhuman and barbaric" and deny an inmate of "the minimal measure of life's necessities" violate the Eighth Amendment. *Palmer*, 193 F.3d at 352. The Fifth Circuit has stated that the length of time spent in offensive conditions should be taken into account, because a "filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003) (quoting *Davis*, 157 F.3d at 1006). Case law in other jurisdictions establishes that when inmates spend relatively short periods of time in unsanitary conditions there is no constitutional violation. *See Smith v. Copeland*, 87 F.3d 265, 267 (8th Cir. 1996) (four days with overflowed toilet); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 956-57 (8th Cir. 1994) (twenty-four hours with trash on floor, hair, dried mucus, spit and vomit in sink and dried feces on toilet seat); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five days in filthy, roach-infested cell without toilet paper).

The conditions alleged by Plaintiff certainly exposed him to some unpleasantness for three days, but were not so egregious as to rise to the level of cruel and unusual punishment of "sufficiently serious" deprivations. *See Housley v. Harrison Cty., Miss.*, 2015 WL 5577063, at *3 (S.D. Miss. Sept. 22, 2015) (Plaintiffs' temporary exposure to feces and vomit for three days did not rise to the level of cruel and unusual punishment); *see also Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) ("extreme" deprivations required for Eighth Amendment conditions of confinement claim).

Moreover, the alleged conditions of the cell especially for a limited length of time did not create a risk of sufficient seriousness to Plaintiffs' health and safety. The only alleged injury Plaintiff suffered was a rash, which according to Plaintiff's deposition testimony he did not report to medical staff until close to a month after this incident. *See* [92-1]. "Several courts have

held that a rash resulting from cell conditions is a de [minimis] injury that does not rise to the level of a constitutional violation or that some evidence linking the conditions and the rash must be presented." *Brown v. Pierce*, 2008 WL 619288, at *5 (C.D. Ill. Mar. 4, 2008) *(citing Mase v. Henry* County Jail, 2006 W 3091046 at 1 (W.D.Va. Oct. 27, 2006) (even if plaintiff "suffered from a rash, such minor skin conditions do not rise to the level of a "serious or significant physical injury."); *Hamm v. Riley*, 2007 WL 137761 at 2 (D.S.C. May 7, 2007)(no evidence overcrowding caused rash, no evidence of any actual harm); *Holder v. Hebert*, 2007 WL 4299996 at 3 (W.D.La. Nov. 8, 2007) (rash on legs is a *de minimis* physical injury.); *Lives v. Camden Co. Dept of Corrections*, 225 F. Supp. 2d 450 (D.N.J.2002) (no evidence unsanitary shower conditions caused rash, no evidence or harm)). Plaintiff did submit pictures of his arms as proof of a rash. See [95-1] at 30.  However, Plaintiff's minor skin condition that he claims resulted from his cell does not rise to the level of a constitutional concern.

Additionally, the denial of a mattress for 10-12 hours while Plaintiff was on suicide watch did not deprive Plaintiff of the minimal civilized measure of life's necessities. *See Grissom v. Davis*, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not a deprivation of basic human needs and did not cause plaintiff to suffer serious harm); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir.1996) (sleeping without mattress or blanket for four days on a concrete slab in cell located ten feet from exterior door during winter did not deny plaintiff the minimal civilized measures of life's necessities); *Seltzer–Bey v. Delo*, 66 F.3d 961, 964 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress or blanket for two days was not unconstitutional when there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety); *Williams v. Delo*, 49 F.3d

8

442, 445 (8th Cir.1995) (placement in strip cell without clothes, running water, mattress, pillow, sheets or blanket for four days, when plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional).

Plaintiff has failed to designate specific facts demonstrating that he was exposed to conditions which have resulted in substantial risk of serious harm to his health or safety. Plaintiff's allegations describe uncomfortable conditions of confinement for a few days, not the deprivation of a minimum measure of life's necessities. *See Johnson v. Texas Board of Criminal Justice*, 281 Fed. App'x 319, 321 (5th Cir. 2008); *see also Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

**Official Capacity/*Monell* Claim**

To the extent that Plaintiff is attempting to bring an official capacity claim against the Defendants, that claim also fails. "For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff has failed to allege, much less demonstrate that any government entity implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation, thus his claim will be dismissed. *See id.*

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgment [92] should be granted and the Plaintiff's Motion for Summary Judgment [94] should be denied.

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion for Summary Judgment [94] is DENIED.

2. Defendants' Motion for Summary Judgment [92] is GRANTED.

3. This action is dismissed with prejudice.

4. Defendants' Motion to Strike [100] the Plaintiff's Motion for Summary Judgment is denied as moot.

5. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED, this the 10th of November, 2016.

                                           s/ Michael T. Parker
                                           United States Magistrate Judge